IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RANDY CORNELIUS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 2:06-cv-312-WKW |
| | ) |
| CITY OF ANDALUSIA, ALABAMA, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendant the City of Andalusia, Alabama, submits this Memorandum in support of its Motion to Dismiss.

**I. INTRODUCTION**

This lawsuit arose from some law enforcement officers' response to a private citizen's complaint about illegal hunting in Covington County, Alabama, on November 13, 2004. (See Doc. 16 at 2, ¶ 5, and at 4, ¶ 19.) The Plaintiff alleges he was subjected to a traffic stop at gunpoint by the officers as a result of the citizen's complaint. (See Doc. 16 at 3, ¶¶ 11-12.) This Memorandum shows that, as to the City of Andalusia, the Amended Complaint does not state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6).

**II. STATEMENT OF THE CASE**

**A. Factual Allegations**

According to the Amended Complaint, on November 13, 2004, plaintiff Randy Cornelius and a companion, Casey Johnston, hunted on land that Cornelius leased in Covington County. (See Doc. 16 at 2, ¶¶ 5-6.) At sundown,

Cornelius and Johnston emerged from the woods and prepared to leave the property in Cornelius's car. (See Doc. 16 at 2, ¶ 6.)

When Cornelius and Johnston tried to enter the public road, their way was blocked by defendant Andy Willis, a private citizen. (See Doc. 16 at 2, ¶ 7.) Willis used his truck to block the exit. (See Doc. 16 at 2, ¶ 7.)

After a brief conversation between Cornelius and Willis, Cornelius drove his car around Willis's truck. (See Doc. 16 at 3, ¶ 8.) Cornelius and Johnston drove toward Andalusia, and Willis followed them in his truck. (See Doc. 16 at 3, ¶ 9.)

Cornelius alleges that, as they drove into Andalusia, Willis used his cellular telephone to contact Game Warden Keith Kipp and report Cornelius and Johnston for a crime. (See Doc. 16 at 4, ¶ 19.)

Cornelius claims that, as he and Johnston approached the Andalusia city limits, they encountered a police roadblock. (See Doc. 16 at 3, ¶ 11.) Cornelius claims Game Warden Kipp and other unnamed law enforcement officers ordered him out of his car at gunpoint and placed him in handcuffs. (See Doc. 16 at 3-4, ¶¶ 12-14.) Cornelius claims he and Johnston were detained for approximately one hour at the roadside and then released. (See Doc. 16 at 4, ¶ 17.)

Cornelius filed this lawsuit against Willis, Kipp, and the City of Andalusia on April 6, 2006. (See Doc. 1.)

**B. Statement of the Case**

On April 28, 2006, Kipp filed a motion for more definite statement. (See Doc. 4.) On April 29, 2006, the City of Andalusia filed a motion to strike all fictitious party claims and to strike the punitive damages claims against the City. (See Doc. 6.)

On June 15, 2006, the Court granted the motion for more definite statement and the motion to strike. (See Doc. 11.) The Court ordered the Plaintiff to file an amended complaint no later than July 13, 2006. (See Doc. 11.) The Plaintiff filed his Amended Complaint in accordance with the deadline. (See Doc. 16.)

As explained below, the Amended Complaint does not state an actionable claim against the City. See Fed. R. Civ. P. 12(b)(6).

**C. Statement of Claims**

The Amended Complaint contains five counts against the City. (See Doc. 16 at 5-8, ¶¶ 21-40.)

Count One alleges the City violated the Plaintiff's Fourth and Fourteenth Amendment rights by using deadly force against him. (See Doc. 16 at 5, ¶¶ 23-24.) Section III(B) of this Memorandum shows, first, that the Fourteenth Amendment does not apply to claims of excessive force in the context of an arrest or investigatory stop and, second, that the Plaintiff has not stated a Fourth Amendment claim against the City.

Count Two also alleges a Fourth Amendment violation. (See Doc. 16 at 6, ¶ 27.) As explained in Section III(C), infra, Count Two also does not state a Fourth Amendment claim against the City.

Count Three does not make sense. (See Doc. 16 at 6, ¶ 30.) Read literally, it alleges the City negligently trained its police officers and thereby caused Game Warden Kipp and private citizen Willis to commit intentional acts in violation of the Fourteenth Amendment. (See Doc. 16 at 6, ¶ 30.) Regardless of the confusion, Section III(D) explains that the Fourteenth Amendment does not apply to claims of excessive force during an arrest or investigatory stop and that, in any event, simple negligence does not give rise to a constitutional claim.

Count Four alleges a state law negligence claim against the City under the doctrine of respondeat superior. (See Doc. 16 at 7, ¶¶ 34-36.) Section III(E) shows that the immunity granted by Alabama Code section 6-5-338(b) bars negligence claims against municipalities for the acts of their police officers.

Count Five alleges the City negligently trained its police officers. (See Doc. 16 at 8, ¶¶ 38-39.) Section III(F) shows that, except in cases of premises defects, a municipality is immune from suit on a *direct* theory of negligence.

The Amended Complaint does not state an actionable claim against the City. The City is entitled to a judgment of dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### III. ANALYSIS

**A. Motion to Dismiss Standard**

"A motion to dismiss is granted only when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Spain v. Brown & Williamson Tobacco Corp., 363 F.3d 1183, 1187 (11th Cir. 2004) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

"In evaluating a motion to dismiss, the court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party." Barnette v. Phenix City, No. 3:05-cv-473-WKW, 2006 WL 680595, at *1 (M.D. Ala. Mar. 15, 2006) (Watkins, J.).

The threshold is "exceedingly low" to survive a motion to dismiss. See Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985).

**B. Count One – Fourth and Fourteenth Amendments**

Count One alleges two constitutional torts against the City:

> 23. The actions of the Defendants named in this action have violated and deprived Plaintiff of his Fourth Amendment rights by the wrongful use of deadly force as a seizure upon the person of the Plaintiff without cause or justification.
>
> 24. The actions of Defendants named in this action have violated and deprived Plaintiff of his Fourteenth Amendment rights in that the use of deadly force violate[d] Plaintiff's rights of due process.

(Doc. 16 at 5, ¶¶ 23-24.)

### *1. Fourteenth Amendment Inapplicable*

The Fourteenth Amendment is inapplicable to claims of excessive force in the course of an arrest or investigatory stop:

5

> "Today we make explicit what was implicit in <u>Garner's</u> analysis, and hold that *all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."

<u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989) (referring to <u>Tennessee v. Garner</u>, 471 U.S. 1 (1985)); <u>see also</u> <u>Yelverton v. Vargo</u>, 386 F. Supp.2d 1224, 1228 (M.D. Ala. 2005) (Thompson, J.) (holding Fourth Amendment, rather than Fourteenth, governs claim alleging excessive force during an arrest or investigatory stop).

Because the Fourth Amendment exclusively governs all claims of excessive force during the seizure of a free citizen, the Fourteenth Amendment claim should be dismissed.

### 2. *Respondeat Superior Not Available Under Fourth Amendment*

The Plaintiff also alleges the Defendants violated the Fourth Amendment by using deadly force against him. In terms of the City, the Plaintiff could only be referring to the acts of its police officers.

However, "A municipality may not be held liable under section 1983 on a theory of respondeat superior." <u>Snow v. City of Citronelle</u>, 420 F.3d 1262, 1270 (11th Cir. 2005); <u>see also</u> <u>Henderson v. Inabinett</u>, No. 2:05-cv-64-WKW, 2006 WL 1132979, at *5 (M.D. Ala. Apr. 27, 2006) (Watkins, J.) ("Municipalities may not be held liable on a *respondeat superior* theory.").

"A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a

6

government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Department of Social Servs., 436 U.S. 658, 694 (1978).

Because the respondeat superior doctrine does not apply to constitutional claims, the Fourth Amendment claim should also be dismissed.

**C.  Count Two – Fourth Amendment**

Count Two repeats the Fourth Amendment claim: "The actions of the Defendants named in this action have violated and deprived Plaintiff of his Fourth Amendment rights by the wrongful use of deadly force as a seizure upon the person of the Plaintiff without cause of justification." (Doc. 16 at 6, ¶ 27.)

For the reasons stated in Section III(B)(2), supra, Count Two does not state a claim against the City upon which relief may be granted. See Snow v. City of Citronelle, 420 F.3d 1262, 1270 (11th Cir. 2005) ("A municipality may not be held liable under section 1983 on a theory of respondeat superior.").

**D.  Count Three – Fourteenth Amendment**

Count Three does not make sense: "As a result of Defendant City of Andalusia's negligent training of its police officers, Defendants' actions against Plaintiff Cornelius were intentional in that Defendants' actions prevail in an action of conscious disregard for the consequences to Plaintiff in violation of Plaintiff's Fourteenth Amendment Rights." (Doc. 16 at 6, ¶ 30.)

Read literally, Count Three alleges the City negligently trained its police officers, which caused the other defendants – neither of whom actually works for the City – to violate the Plaintiff's Fourteenth Amendment rights. The Plaintiff probably intended to refer to the City's unnamed police officers when he used the word "Defendants".

In any event, the legal theories underlying this claim – Fourteenth Amendment violation and negligence – are inapplicable.

### 1. *Fourteenth Amendment Inapplicable*

As explained in Section III(B)(1), supra, the Fourteenth Amendment does not apply to claims of excessive force during the course of an arrest or investigatory stop of a free citizen. See Graham v. Connor, 490 U.S. 386, 396 (1989).

Because the Fourteenth Amendment does not apply in this context, Count Three should be dismissed.

### 2. *Negligence Claim Inapplicable*

Moreover, negligent conduct cannot give rise to a constitutional claim. See Ansley v. Heinrich, 925 F.2d 1339, 1344 (11th Cir. 1991) ("Negligent conduct alone absent any intentional government conduct could not form the basis of a section 1983 claim premised on the Fourth Amendment.").

"The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989).

Because negligence does not give rise to a constitutional claim, Count Three does not state a claim upon which relief can be granted.

**E. Count Four – State Law Negligence / Immunity**

Count Four asserts a respondeat superior claim under Alabama Code section 11-47-190 based on the alleged negligence of the City's unnamed police officers: "The policemen yet unknown to Plaintiffs [sic] at this time but are liable to Plaintiff, conducted themselves in a manner below that standard of care inadvertently and with indifference in the seizure of Cornelius and did breach the duty owed to Cornelius and Johnston and the public at large." (See Doc. 16 at 7, ¶ 35.)

In pertinent part, section 11-47-190 states:

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty…

Ala. Code § 11-47-190 (1975).

Although section 11-47-190 creates a cause of action against municipalities for the negligence of their employees, section 6-5-338 takes away that claim when the employee is a police officer:

> (a) Every peace officer … shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.
>
> (b) This section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers.

Ala. Code § 6-5-338 (1975).

To the extent the Plaintiff claims the City's unnamed police officers negligently seized him, the officers have immunity under section 6-5-338. "A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's … (4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons." Ex parte Cranman, 792 So. 2d 392, 405 (Ala. 2000).

In City of Birmingham v. Sutherland, the Alabama Supreme Court held section 6-5-338's immunity encompasses a police officer's determination of how much force to use during a seizure. 834 So. 2d 755, 762 (Ala. 2002) ("he was performing a discretionary function when he chose to make a warrantless arrest and a discretionary function when he chose the manner in which he would effect the arrest"). Just as alleged in this case, the officer in Sutherland pointed his handgun at the plaintiff to effect the seizure. See id. at 756. The Alabama Supreme Court granted the officer immunity. See id. at 762.

Because a police officer enforcing criminal laws is immune from liability for negligent acts under section 6-5-338(a), the municipality that employs the officer is also immune. "It is well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune." Howard v. City of Atmore, 887 So. 2d 201, 211 (Ala. 2003); see also Ex parte City of Tuskegee, No. 1040062, 2005

WL 3557403, at *12 (Ala. Dec. 30, 2005) (discussing combined effect of sections 6-5-338 and 11-47-190).

Under Alabama Code section 6-5-338(b), the City is immune from the respondeat superior negligence claim.

### F.  Count Five – State Law Negligent Training / Immunity

#### *1.  Direct Claim Will Not Lie*

Count Five asserts a direct claim against the City for negligently training its police officers: "Defendant City of Andalusia failed in its duty to train its policemen appropriately under the circumstances in the use of deadly force and the events surrounding the arrest and seizure of Plaintiff." (Doc. 16 at 8, ¶ 39.)

Except for claims arising from premises defects, a *direct* tort action will not lie against a municipality:

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty, or unless the said injury or wrong was done or suffered through the neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways or buildings…

Ala. Code § 11-47-190 (1975).

In construing section 11-47-190's predecessor, which was substantially identical, the Alabama Supreme Court held, "It seems to us that the limitation of liability in that statute necessarily means to exclude liability on any other account." City of Bessemer v. Chambers, 8 So. 2d 163, 165 (Ala. 1942).

11

In City of Lanett v. Tomlinson, the Alabama Supreme Court confirmed that interpretation of the modern statute:

> This Court has long interpreted § 11-47-190 to limit municipal liability to two distinct classes. The municipality may be liable (1) under the doctrine of respondeat superior for injuries that result from the wrongful conduct of its agents or officers in the line of duty. The municipality may also be liable (2) for injuries that result from its failure to remedy conditions created or allowed to exist on the streets, alleys, or public ways by a person or corporation "not related in service" to the municipality.

City of Lanett v. Tomlinson, 659 So. 2d 68, 70 (Ala. 1995).

In light of section 11-47-190, the Plaintiff may not assert a *direct* claim against the City for negligent training.[1]

### 2.  *Negligent Training Cases*

Consistent with the foregoing analysis, the Alabama Supreme Court and the United States District Court for the Southern District of Alabama have rejected negligent training claims against municipalities on three occasions.

In City of Crossville v. Haynes, the Alabama Supreme Court held the Plaintiff could not bring a direct claim against the city for negligent training. 925 So. 2d 944, 956 (Ala. 2005) ("Haynes was not entitled to assert a 'direct' claim against the City of Crossville under § 11-47-190."). The Supreme Court held the city was entitled to a judgment as a matter of law and reversed a jury award for the plaintiff. See id.

---

[1] The Plaintiff also could not state a claim for respondeat superior liability against the City by asserting a negligent training claim against its police chief. See City of Crossville v. Haynes, 925 So. 2d 944, 956 (Ala. 2005) (holding police chief and municipality entitled to immunity from negligent training claim); Howard v. City of Atmore, 887 So. 2d 201, 209-10 (Ala. 2003) (same); see also Ott v. City of Mobile, 169 F. Supp.2d 1301, 1315 (S.D. Ala. 2001) (holding police supervisor cannot be liable under negligent training theory).

In <u>Styron v. City of Foley</u>, Judge Granade of the United States District Court for the Southern District of Alabama held, "Alabama does not recognize an action against a municipality for negligent hiring, supervising, or training." No. 03-572-CG-L, 2005 WL 3098926, at *4-5 (S.D. Ala. Nov. 18, 2005) (Granade, C.J.).

Judge Butler reached the same holding in <u>Ott v. City of Mobile</u>, 169 F. Supp.2d 1301, 1314-15 (S.D. Ala. 2001) (Butler, C.J.) (holding direct action will not lie against municipality for negligent training of police officer).

Under Alabama Code section 11-47-190, the City is immune from the negligent training claim.

## IV.  <u>CONCLUSION</u>

None of the counts in the Amended Complaint states a viable claim against the City.  The motion to dismiss should be granted.


        **/s/ James H. Pike**
        James H. Pike  (PIK003)
        Attorney for Defendant
        The City of Andalusia, Alabama

OF COUNSEL:

COBB, SHEALY, CRUM & DERRICK, P.A.
P.O. Box 6346
Dothan, Alabama 36302-6346
Tel. (334) 677-3000
Fax (334) 677-0030
E-mail: jpike@cobb-shealy.com

## **CERTIFICATE OF SERVICE**

I, James H. Pike, certify that on July 24, 2006, I electronically served a copy of this document upon:

J. Scott Hooper
The Hooper Law Firm, P.C.
P.O. Box 230894
Montgomery, Alabama  36123-0894

Michael S. Burroughs
Burroughs & Guin, L.L.P.
P.O. Box 1908
Tuscaloosa, Alabama  35403-1908

William A. Gunter, IV
Alabama Department of Conservation and Natural Resources
64 North Union Street, Suite 474
Montgomery, Alabama  36130

**/s/ James H. Pike**
James H. Pike